In the Interest of Ron Andre SHAW, Michael Germain Freeman, and Erica Ann Freeman, Minor Children.

No. 08–96–00351–CV.

Court of Appeals of Texas, El Paso.

March 26, 1998.

J. K., 'Rusty' Wall, Law Office of J. K Rusty Wall, Midland, for Appellant.

Charles G. Childress, TX Dept. of Protective & Regulatory Services, Austin, for Appellee.

Before LARSEN, McCLURE and CHEW, JJ.

### OPINION

McCLURE, Justice.

We withdraw our opinion of November 6, 1997, and substitute this opinion in its stead. The motion for rehearing submitted by the Texas Department of Protective and Regulatory Services is overruled. At issue is the termination of parental rights with regard to three young children. We affirm in part and reverse and remand in part.

### NATURE OF THE FAMILIAL RELATIONSHIPS

Rosa Anna Freeman (Freeman) is the mother of Michael and Erica Freeman and Ron Shaw, Jr. Ron Shaw, Sr. is the father of Michael and Erica, but he is not the biological father of Ron Shaw, Jr. At the time the Department of Protective and Regulatory Services (DPRS) filed its first amended petition in suit affecting the parent-child relationship, the father of Ron Shaw, Jr. was unknown. Accordingly, the petition named Freeman as the mother of all three children, requested service of process upon her and sought termination of her parental rights. Ron Shaw, Sr. was named as the father of Michael and Erica; the petition requested service of process upon him, and sought termination of his rights with regard to his two children. The petition then addressed Ron Shaw, Jr.

> The parent-child relationship between the child, Ron Shaw, and the biological father does not exist in law or in fact. [DPRS] requests that any parental rights of any unknown father of the child be terminated pursuant to Section 161.002, Texas Family Code. If, after being served with citation in this suit, any unknown father does not respond by timely filing an admission of paternity or by filing a counterclaim for paternity or for voluntary legitimation to be adjudicated under Chapter 160 of the Texas Family Code before the final hearing in this suit [sic].

Freeman answered; Ron Shaw, Sr. filed an affidavit of relinquishment and waived issuance and service of citation.

Having identified the parties, we now introduce the attorneys. Chris McCormack was originally appointed as attorney ad litem to represent the interests of the unknown father of Ron Shaw, Jr. and filed an answer on his behalf. Edmond Martin subsequently replaced McCormack as the ad litem for the father. David Lindemood was appointed as attorney ad litem for all three children. Sara Spector represented DPRS; John Cook represented Freeman, standing in for her court-appointed counsel, Ian Cantacuzene. Shortly before trial, Jeremiah Worsham (Worsham) was identified through paternity testing as the biological father of Ron Shaw, Jr. Edmond Martin appeared on his behalf at trial. That having been said, the following announcements were made at the beginning of the trial:

> The Court: Court will come to order, please. I will call Number 25,412, In The Interest Of The Freeman Children. Is Mr. Edmond Martin here?
>
> Mr. Martin: Yes, Your Honor.
>
> * * * * *
>
> The Court:—Mr. Martin is the attorney ad litem for the—
>
> Ms. Spector: One of the dads.
>
> The Court: For the father, right?
>
> Ms. Spector: One of the fathers.
>
> The Court: For Ron.
>
> Ms. Spector: No.
>
> Mr. Lindemood: The father of Ron Shaw.
>
> Ms. Spector: Yeah, for the father of Ron Shaw, Jr. This is very confusing.
>
> The Court: And how about the Texas Department of Protection and Regulatory

Service, is represented by Ms. Spector, correct?

Ms. Spector: Correct.

* * * * *

The Court:—And who is the ad litem for the children?

Mr. Lindemood: I am, Your Honor. It's David Lindemood, L-i-n-d-e-m-o-o-d.

The Court: And you are guardian ad litem for all the children?

Mr. Lindemood: For all three children.

The Court: And you don't see any conflict of interest in that, do you?

Mr. Lindemood: No, sir.

The Court: And is there more than one father, you say?

Ms. Spector: Yes, but the other father, Ron Shaw, Sr., has filed a waiver of rights, relinquishment.

The Court: Let's see. All right. And now, the mother, Rosie Freeman, is she here?

Mr. Cook: Present and ready, John Cook filling in for Ian Cantacuzene.

The Court: C-o-o-k?

Mr. Cook: Yes, sir.

The Court: And you are for the mother?

Mr. Cook: Yes, sir.

The Court: And what's the name of the child that's here by waiver?

Ms. Spector: The father signed a waiver, Ron Shaw, Sr.

The Court: What's the child's name?

Ms. Spector: He's the father of Michael and Erica, but not Ron Shaw, Jr.

The Court: Michael and Erica's father here by waiver. Are all parties ready?

Ms. Spector: Yes, sir.

The Court: Do any of the parties desire to invoke the Rule?

Ms. Spector: No, Your Honor. **For the record, today we are not proceeding on termination on Jeremiah Worsham. We haven't filed on termination for him, yet. He's just—**

Mr. Martin: Right. Your Honor, in this case—

The Court: We've got three sets of children; is that it?

Mr. Martin: Well, there's three children. One—

The Court: I've got the three children.

Mr. Martin: Right. The third child that I represent the father of, just recently, they did paternity testing, established that he was the father of the child, and so he's here today on behalf of Ron Shaw, Jr.

**Ms. Spector: We are proceeding on termination on the mother of Ron Shaw, Jr., but not on the father. And the other two children, we are proceeding on both parents.**

**The Court: Other two children, what?**

**Ms. Spector: Both parents, we're asking for termination today.**

**The Court: So you are waiving any termination as to Ron Shaw's father?**

**Ms. Spector: Today, we are. We have not yet filed.** [Emphasis added]

## RELIEF GRANTED

Following the hearing, the trial court terminated the rights of Rosa Anna Freeman as to all three children and terminated the parent-child relationship between Ron Shaw, Sr. and Michael and Erica. The order is silent as to any action taken with regard to Jeremiah Worsham. Only Freeman appeals.

## JURISDICTION

■ DPRS urges that we lack jurisdiction to consider the appeal because the order of termination is interlocutory and not appealable. It contends that Worsham was a necessary party to the termination suit pursuant to TEX.FAM.CODE ANN. 102.009(a)(Vernon 1996), that the live pleading at trial sought termination of his rights, but that the termination order from which this appeal springs is silent as to him. It merely terminates the parental rights of Freeman as to all three children and the parental rights of Ron Shaw, Sr. as to Michael and Erica. There is no order severing the suit with respect to Ron Shaw, Jr. or Worsham. In support of this argument, DPRS cites us to *Kutzer v. Moore*, 556 S.W.2d 865 (Tex.Civ.App.—San Antonio 1977, no writ).

We first comment that the Family Code requires only notice and service of process on designated individuals with regard to an original suit affecting the parent-child relationship. Pertinent to this case, § 102.009(a) requires service of citation upon each parent as to whom the parent-child relationship has not been terminated or process has not been waived under Chapter 161, and upon an alleged father, unless there is attached to the petition an affidavit of waiver of interest in a child executed by the alleged father as provided by Chapter 161. TEX.FAM.CODE ANN. § 102.009(a)(7) and (8). Thus, Worsham was entitled to notice of the termination suit against Freeman, regardless of whether termination was sought against him. That is not to say, however, that any termination sought against him had to be pursued in conjunction with the suit against Freeman. Statutory grounds for termination may exist as against one parent, but not the other. Or, if grounds exist as to both parents, they may not occur simultaneously. Here, an attorney ad litem was appointed to represent what, at the time the first amended petition was filed, was an unknown father. When paternity was established, the substitute ad litem continued to represent Worsham. Full compliance with the Family Code having been demonstrated, we must now address the termination proceedings against Worsham.

We find *Kutzer* inapplicable. There, the Moores filed suit to terminate the parental rights of the Kutzers with regard to two children. Although the petition sought termination of both parents, the judgment terminated only the rights of the mother; it was silent as to the father except to note that he appeared with his attorney at trial and that no pleadings were filed on his behalf. The mother appealed. In deciding that it lacked jurisdiction to review the matter, the appellate court concluded that the termination action against the father was not disposed of in the judgment and was still pending. As a result, the order was interlocutory and not appealable until the action against the father was either severed or finally adjudicated. *Kutzer,* 556 S.W.2d at 866.

In the matter before us, the record indicates that although termination was originally sought against the unknown father of Ron Shaw, Jr., the pleading was never amended to seek termination of Worsham's parental rights. An attorney appointed to represent the unknown father filed an answer on his behalf; once his identity was established, the substitute ad litem appeared at trial to represent Worsham. At that point, the original pleadings against the father of Ron Shaw, Jr. were abandoned and waived by the attorney representing DPRS. We have highlighted above the portion of the record reflecting abandonment of the termination proceedings against Worsham.

 "A party who abandons any part of his claim or defense, as contained in the pleadings, may have that fact entered of record, so as to show that the matters therein were not tried." TEX.R.CIV.P. 165. Whether a pleading has been abandoned is a question of law which we review de novo. *Sosa v. Central Power & Light Co.,* 901 S.W.2d 562, 567 (Tex.App.—San Antonio 1995), *rev'd on other grounds,* 909 S.W.2d 893 (Tex.1995). Formal amendment of the pleadings is not required in order to show abandonment. *Id.* Indeed, a stipulation may form the basis for abandonment. *Id.* The exchange we have detailed, conducted in open court on the record, constitutes such a stipulation of abandonment. Accordingly, the order of termination is a final order sufficient to invoke our jurisdiction.

## SUMMARY OF THE EVIDENCE

Because we do not reach Freeman's insufficiency complaints, we will not engage in a detailed review of the evidence. DPRS began working with Freeman and her children in December 1991 as the result of a complaint that Freeman had neglected her children. A second referral occurred in March 1992, but the investigation was closed in April 1992. Still a third investigation was opened in June 1992, which led to the removal of the children from their mother and placement in an emergency children's shelter. DPRS was appointed temporary managing conservator by agreement, and the children were moved from the emergency

shelter to a foster home. DPRS continued to work with Freeman through a service plan designed to reunite her with her children. Between 1992 and 1995, the children remained in foster care. Freeman visited at times; at other times the caseworkers lost contact with her entirely. She was incarcerated for a short while in July 1992, and again in late 1993. In January 1994, she notified DPRS that she was in Odessa "hiding out from the law." In August of that year, she was convicted for burglary of a habitation and received probation. In early 1995, she left Midland and moved to Marlin, Texas without notifying DPRS or her probation officer. Her probation was ultimately revoked and she was incarcerated on April 30, 1995. She remained incarcerated at the time of trial and participated in the proceedings by virtue of a bench warrant. She admitted to substance abuse and explained that her nomadic habits[1] arose from her efforts to escape an abusive relationship.

DPRS filed suit to terminate the parent child relationship in October of 1995, alleging that Freeman had:

- voluntarily left the children alone or in the possession of another not the parent and expressed an intent not to return;
- knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children;
- engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children;
- failed to support the children in accordance with her ability during a period of one year ending within six months of the date of filing;

- constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Texas Department of Protective and Regulatory Services or an authorized agency for not less than one year.

As part of the constructive abandonment theory, DPRS alleged that it had made reasonable efforts to return the children to Freeman, that she had not visited or maintained contact with the children, and that she had demonstrated an inability to provide the children with a safe environment. It further argued that Freeman had moved out of town without notice, and even while incarcerated, failed to write or call her children. The issue of a safe environment revolved around Freeman's abusive relationship with Ron Shaw, Sr.

In its decree of termination, the court[2] specifically found that the DPRS had abandoned the first and fourth grounds and failed to meet its burden of proof with regard to the second and third grounds. It found, however, that DPRS had proven by clear and convincing evidence that Freeman had constructively abandoned her children; that Freeman failed to make contact with DPRS or her children from September 13, 1994 until November 14, 1995; and that she had been incarcerated continuously since April 30, 1995.

Freeman raises three points of error. She first alleges that TEX.FAM.CODE ANN. § 161.001(1)(N) as applied to her represents an unconstitutional, ex post facto law in violation of TEX.CONST. art. I, § 16. In her second and third points, she contends that the record contains legally and factually insufficient evidence to support the termination.

---

**1.** The record reflects that Freeman moved frequently from motel to motel. On at least one occasion, she relocated to escape a violent and abusive relationship with Ron Shaw, Sr. Freeman did reside at the Salvation Army and the battered women's shelter for some period of time. Caseworkers believed that this violent relationship created a harmful environment for the children, although the children themselves were never the target of the violence. One caseworker testified that the "service plan task was that she stay completely away from Ron" and she lament-

ed that Freeman and Shaw had reconciled. However, it appears from the record that in September 1994 at least, Shaw was allowed unsupervised visitation with the children while Freeman was not. That became an issue during her last visit with the children on September 13, 1994, when she threatened that "if I can't see them, then no one can."

**2.** The record reflects that the case was heard by the Honorable Royal Hart, Senior District Judge.

Because we find the first point dispositive, we do not reach the latter.

## EX POST FACTO LAW

■ Freeman contends that the retroactive application of Tex.Fam.Code Ann. § 161.001(1)(N) to terminate her parent-child relationship violated her rights under Tex. Const. art. I, § 16, which protects citizens, inter alia, against the creation of ex post facto laws.[3] She complains that by measuring the statutory one-year period of constructive abandonment from September 13, 1994, the trial court applied Section 161.001(1)(N) retroactively to impair her vested parental rights.

■ The parent-child relationship is of constitutional magnitude. *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Wiley v. Spratlan,* 543 S.W.2d 349, 352 (Tex.1976). Termination of that relationship "is complete, final, irrevocable. It divests for all time the parent and child of all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit." *Id.* Because termination cannot be justified without solid and substantial reasons, the proceedings must be strictly scrutinized. *Id.*

■ The prohibition against ex post facto laws found in the Texas Constitution applies both to civil and criminal laws. To that extent, it provides greater protection than the federal constitution. Texas courts have held that art. I, § 16 invalidates retroactive applications of laws that destroy or impair vested rights. *Deacon v. City of Euless,* 405 S.W.2d 59, 62 (Tex.1966). Where a law is procedural or remedial in nature, however, retroactive application does not violate art. I, § 16. *Sims v. Adoption Alliance,* 922

S.W.2d 213, 215 (Tex.App.—San Antonio 1996, writ denied).

Former Tex.Fam.Code Ann. § 161.001(1)(N)[4] provided as follows:

### § 161.001. Involuntary Termination of Parent–Child Relationship

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:

(1) that the parent has:

(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services or an authorized agency for not less than one year, and:

> (I) the department or authorized agency has made reasonable efforts to return the child to the parent;
>
> (ii) the parent has not visited or maintained contact with the child; and
>
> (iii) the parent has demonstrated an inability to provide the child with a safe environment; and

(2) that termination is in the best interest of the child.

Tex.Fam.Code Ann. § 161.001, enacted in 1995, recodified and expanded the former Tex.Fam.Code Ann. § 15.02(a). As pointed out by the annotation to § 161.001(1)(N):

> The 1995 amendment adding Subsection (1)(N) provides a new ground to be used in those situations in which a child has been removed from a home before serious damage to the child has occurred, and before a termination ground exists. Thereafter, a ground for termination may come into existence if the parent does not maintain contact with the child and does not take the steps required to convince the court that the child can be safely returned to the

---

3. We have previously stated that the term "ex post facto" refers to any law passed after the commission of an act which retrospectively changes the consequences of the act. *Bowers v. State,* 914 S.W.2d 213, 216 (Tex.App.—El Paso 1996, pet. ref'd), *citing Grimes v. State,* 807 S.W.2d 582 (Tex.Crim.App.1991). It is a "term of art that had an established meaning at the time of the framing of the United States Constitution" and which generally arose in the criminal context. *Id.,citing Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d

30, 38 (1990) and *Calder v. Bull,* 3 U.S. 386, 3 Dall. 386, 390–92, 1 L.Ed. 648 (1798).

4. Subsection (1)(N) was amended during the 1997 legislative session to shorten the time of constructive abandonment from one year to six months, and to clarify that the contact a parent must maintain shall be regular and significant. Because this cause was tried, briefed, and submitted under the former version of the statute, all references are to the earlier provisions.

parent. Note that the statute is so narrowly drawn that considerable time must elapse—at least a year—before this default in responsible parenting triggers the ability of DPRS to seek termination.

SAMPSON & TINDALL'S TEXAS FAMILY CODE ANNOTATED, August 1996 [5] edition, p. 534.

The Eastland Court of Appeals has recently concluded that the parent-child relationship is a vested right for purposes of the constitutional protections against retroactive statutes. *In re R.A.T., R.L.T., P.R.T., and B.T.*, 938 S.W.2d 783, 784 (Tex.App.—Eastland 1997, writ denied). In a remarkably similar factual scenario, DPRS had maintained custody of four children for thirty-two months. Although DPRS tried to work with the mother to improve her parenting skills, she did not cooperate. She had had no contact with her children for at least two years and had failed to provide the children with a safe environment while they were in her care. The charge authorized termination if the jury found from clear and convincing evidence that one of five grounds existed and that termination was in the best interest of the children. The five grounds, including constructive abandonment, were then described in an instruction. To terminate her rights on the basis of constructive abandonment, a period of seven months before the effective date of the statute had to be counted in order to reach the statutory requisite of one year. Although the charge did not inquire on which ground or grounds the jury based its decision, and although there was evidence to support each individual ground, the appellate court determined that the improper charge on constructive abandonment was calculated to cause and probably did cause an improper verdict. Citing *M.L.B. v. S.L.J. and M.L.J.*, 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), the Court concluded that submission of a jury instruction on constructive abandonment was error, because the statute, as applied, violated her constitutional protection against retroactive laws.

Here, of course, the trial court specifically found that DPRS had failed to prove the alternative grounds for termination and indeed, Freeman's rights were terminated solely on the basis of constructive abandonment. DPRS argues that Freeman "was on notice prior to September 1, 1995, that she must maintain contact with her children in order to have her children returned to her." We agree with this statement. Where we disagree is in the nature of the penalty for that conduct. Freeman's failure to maintain contact with her children, while a violation of the service plan, would have only resulted in Freeman being unable to regain managing conservatorship of her children, not in the termination of the parent-child relationship.

DPRS further argues that the legislature clearly intended that the statute apply to pending suits. We are not unmindful of the fact that the enabling provisions provide that the statutory amendment "applies to a pending suit affecting the parent-child relationship without regard to whether the suit was commenced before, on, or after the effective date of this Act." [6] This argument was also rejected in *In re R.A.T.*, 938 S.W.2d at 784 ("Because a vested right is involved, we disagree with the State's argument that the enabling language of the legislation allowed the trial court to instruct the jury on constructive abandonment."). We likewise disagree with DPRS' justification for retroactive effect.

Its third argument, however, is more problematic. DPRS contends that any error is waived because Freeman's trial counsel objected in the trial court only on the basis of the United States Constitution, which applies solely to criminal ex post facto laws, and not on the basis of the Texas Constitution, which as we have noted addresses both criminal and civil pronouncements. A lengthy discourse occurred at trial with regard to the

---

5. The August 1997 edition of the annotated Code has been recently published. The commentary has been altered to reflect the most recent legislative amendments. Because we address here the former version of the statute, we likewise address the former version of the commentary.

6. Enacted by Acts 1995, 74th Leg., R.S., ch. 20, § 1, 1995 TEX.GEN.LAWS 212, eff. April 20, 1995. Amended by Acts 1995, 74th Leg., R.S., ch. 709, § 1, 1995 TEX.GEN.LAWS 3746, eff. Sept. 1, 1995, and by Acts 1995, 74th Leg., R.S., ch. 751, § 65, 1995 TEX.GEN.LAWS 3911, eff. Sept. 1, 1995.

retroactive application of the constructive abandonment grounds:

> The Court: If [the legislature] passed a law today that if you smoke cigarettes around your children, then we're going to terminate your rights, would you try to terminate somebody that smoked cigarettes around their children yesterday?
>
> Ms. Spector: ... Yes, if they say it applied—if they say in the legislation that it applies to a pending suit affecting the parent/child relationship without regard to whether the suit was commenced before or on, after that effective date of ... yes, Your Honor, as quoted by this legislature, I would. If they said that, if they used those words, I would hold it against them. If there was a pending suit against them and if those words were used, yes, I would.

\* \* \* \* \*

> The Court: Well, you're asking her to terminate on grounds that didn't exist when it happened. That's what my question is.
>
> Ms. Spector: And this states—the law states it doesn't matter. It says regardless of when it was filed, Your Honor.
>
> The Court: All right. Does Professor Samson[7] [sic] say whether this—I'll get it this way. Does Professor Samson [sic] say whether that's constitutional or not to retroactively apply it?
>
> Ms. Spector: No, Your Honor ... there is no—there has not been any appellate ... No, it's a new law, Your Honor.
>
> The Court: I know it.
>
> Ms. Spector: And it's TDPRS's policy to follow the law as we know it until it is reversed.

\* \* \* \* \*

> The Court: Do you know of any authority of Professor Samson [sic] or the Courts'

comment on the constitutionality of applying the law retroactively?

> Mr. Cook: No, Judge, and the first thing is to me as an attorney, especially as a defensive attorney, a legislature just saying that this is okay to do it retroactively.
>
> The Court: It's a serious constitutional question, I think.

\* \* \* \* \*

> Mr. Cook: Of course, I am going to raise a constitutional objection to using any dates prior to September 1, 1995, because I believe that basically in the U.S. Constitution we shall pass no law ex post facto, and I think this hits right in there. The other thing is I think that there needs to be notice that you're violating the law before you violate it.
>
> The Court: Well, I'm not sure where ex post facto is a civil or a criminal concept.
>
> Mr. Cook: Well, I think when you're talking about the death penalty, Judge, this case is about the death penalty of her parental rights.
>
> The Court: No, that's the problem, is the U.S. Supreme Court has equated termination to criminal ... law as far as appointed attorneys are concerned ... So are they going to apply ex post facto?
>
> Mr. Cook: I think that's an interesting question, Judge, and I hope we don't have to take this up on appeal to resolve that issue. But I think that's an interesting question.

\* \* \* \* \*

> The Court: In other words, I find by clear and convincing evidence that you've established [constructive abandonment], however, now I have some very serious doubts about its constitutionality.

---

**7.** John J. Sampson is the William Benjamin Wynne Professor of Law at the University of Texas School of Law, where he has taught since 1970. He has served as an academic and legislative advisor to the Family Law Section of the State Bar of Texas since 1975 and as the editor of the State Bar Family Law Section Report since 1976. Together with Harry Tindall of Houston, he has authored an annotated Texas Family Code since 1991. Instrumental in drafting legislation and amendments to the Family Code, Professor Sampson received the 1996 Dan R. Price Award, presented by the Family Law Section to recognize the individual who has made the most significant contribution to the family law bar during a particular year.

 The purpose of the requirement that a specific objection be lodged in the trial court is to ensure that the trial court has the opportunity to rule on the issue. New TEX. R.APP.P. 33.1,[8] like its predecessor Rule 52(a), requires that to preserve a complaint for appellate review, the record must show that the complaint was made to the trial court in a fashion that states the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint, unless the grounds were apparent from the context. It is abundantly clear from the record that the constitutionality of the statute was extensively debated, that the trial judge well understood the issue of whether an ex post facto challenge applied to civil as well as criminal statutes, and that he had serious questions concerning the constitutionality of retroactive application of the constructive abandonment provision. We find that error was preserved.

We conclude that by measuring the requisite statutory period of constructive abandonment from the date of September 13, 1994, nearly a year before the effective date of the statute, TEX.FAM.CODE ANN. § 161.001(N) was applied retroactively in violation of Freeman's constitutional protections. Accordingly, we sustain Point of Error No. One.

### CONCLUSION

We affirm that portion of the order terminating the parent-child relationship between Ron Shaw, Sr. and Michael and Erica Freeman. That portion of the order terminating the parental rights of Rosa Anna Freeman is reversed and remanded to the trial court.

---

8. The Texas Rules of Appellate Procedure were amended effective September 1, 1997.