# NO. 12-14-00216-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF J. L. H.,* | § | *APPEAL FROM THE 420TH* |
| | § | *JUDICIAL DISTRICT COURT* |
| *A CHILD* | § | *NACOGDOCHES COUNTY, TEXAS* |

## MEMORANDUM OPINION

K.H. appeals the termination of her parental rights to J.L.H. and raises three issues on appeal. We affirm.

## BACKGROUND

J.L.H., born August 14, 2013, is K.H.'s third child. K.H. became pregnant with J.L.H. while the Department of Family and Protective Services (the Department) had an open case involving K.H.'s older children, M.H. and N.H. At the time of J.L.H.'s birth, K.H. was not compliant with the Department's service plan and had not done anything to show that "she was willing or able to care for" M.H. and N.H.[1] These factors, in addition to J.L.H.'s inability to self-protect, prompted the Department to file its original petition for protection of a child, for conservatorship, and for termination in a suit affecting the parent-child relationship. On August 16, 2013, the trial court signed an order for protection of a child in an emergency and appointed the Department as the temporary sole managing conservator of J.L.H.

A bench trial was held, and K.H.'s parental rights were terminated. The trial court found that K.H. constructively abandoned J.L.H. for not less than six months, failed to comply with the provisions of a court order that established the actions necessary to obtain the return of J.L.H., and that K.H. has a mental or emotional illness or mental deficiency that renders her unable to

---

[1] The testimony at trial showed that K.H.'s parental rights to her two oldest children were terminated in January 2014.

provide for the physical, emotional, and mental needs of J.L.H. until his eighteenth birthday. The trial court also found that termination of the parent-child relationship was in J.L.H.'s best interest. This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

The involuntary termination of parental rights embodies fundamental constitutional rights. *In re C.L.C.*, 119 S.W.3d 382, 390 (Tex. App.—Tyler 2003, no pet.); *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.—Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001). When the state seeks to terminate one's parental rights, it seeks not only to infringe one's fundamental liberty interest, but to end it. *See In re J.F.C.*, 96 S.W.3d 256, 273 (Tex. 2002). A termination decree is "complete, final, irrevocable [, and] divests for all time the parent and child of all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit." *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.). Thus, the breaking of bonds between a parent and child "can never be justified without the most solid and substantial reasons." *Wiley*, 543 S.W.2d at 352; *In re Shaw*, 966 S.W.2d at 179. Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley*, 543 S.W.2d at 352; *In re Shaw*, 966 S.W.2d at 179. However, parental rights are not absolute, and it is vital that the emotional and physical interests of the child not be sacrificed at the expense of preserving that right. *See In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

The family code permits termination of parental rights if (1) the parent has engaged in any one of the acts or omissions itemized in Section 161.001(1) of the family code, or the parent suffers from a mental deficiency as set forth in Section 161.003 of the family code, and (2) termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001, 161.003(a) (West 2014). Termination under Sections 161.001 and 161.003 requires "clear and convincing evidence," and proof of one statutory element does not alleviate the petitioner's burden of proving the other. *Id.* §§ 161.001; 161.003(a)(2); *see also In re C.L.C.*, 119 S.W.3d at 390. "Clear and convincing evidence" is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2014).

2

There is a strong presumption that the best interest of the child is served by preserving the parent-child relationship, and the burden of proof rests upon the party seeking to deprive the parent of her parental rights. *See Wiley*, 543 S.W.2d at 352; *In re C.L.C.*, 119 S.W.3d at 390-91.

<u>STANDARD OF REVIEW</u>

When the burden of proof is clear and convincing evidence, we conduct a legal sufficiency review by looking at all of the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d at 266. We must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* Thus, it follows that the reviewing court should disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible, but this does not mean that the reviewing court must disregard all evidence that does not support the finding. *Id.* Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *Id.* If, after conducting our legal sufficiency review, we determine that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then we will conclude that the evidence is legally insufficient. *Id.*

When we conduct a factual sufficiency review, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *Id.* Our inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We consider whether the disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If, when viewed in light of the entire record, the disputed evidence is so significant that a fact finder could not have reasonably formed a firm belief or conviction, then the evidence is factually insufficient. *Id.* In finding evidence factually insufficient, the appellate court should detail why it has concluded that a reasonable fact finder could not have credited disputed evidence in favor of its finding. *Id.* at 267.

The standard of review for legal and factual sufficiency challenges maintains a deferential standard for the fact finder's role, which means the trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *In re C.H.*, 89 S.W.3d at 26-27; *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st

Dist.] 1997, pet. denied). Thus, our review must not be so rigorous that the only fact findings that could withstand review are those established beyond a reasonable doubt. *In re C.H.*, 89 S.W.3d at 26.

## TERMINATION UNDER SECTION 161.003

In her first issue, K.H. argues that the evidence is legally and factually insufficient to support a finding that her parental rights should be terminated pursuant to Section 161.003 of the family code.

Section 161.003 of the Texas Family Code permits the termination of parental rights if five elements are met. TEX. FAM. CODE ANN. § 161.003(a) (West 2014). Termination of the parent-child relationship may be ordered if the court finds that

(1) the parent has a mental or emotional illness or mental deficiency that renders the parent unable to provide for the physical, emotional, and mental needs of the child;

(2) the illness or deficiency, in all reasonable probability, proved by clear and convincing evidence, will continue to render the parent unable to provide for the child's needs until the 18th birthday of the child;

(3) the department has been the temporary or sole managing conservator of the child of the parent for at least six months preceding the date of the hearing on the termination[;]

(4) the department has made reasonable efforts to return the child to the parent; and

(5) the termination is in the best interest of the child.

TEX. FAM. CODE ANN. §161.003(a)(1)-(5). The Department has been the sole temporary managing conservator of J.L.H. for at least six months prior to the trial on the hearing on termination, and K.H. does not challenge this part of the trial court's finding. Accordingly, our sufficiency review focuses on the evidence showing K.H.'s mental deficiency, her ability to meet the needs of J.L.H., the reasonableness of the Department's efforts to return J.L.H. to K.H., and whether termination is in J.L.H.'s best interest.

### Mental Deficiency and Ability to Meet Child's Needs

A mental illness or deficiency of a parent is not, in and of itself, grounds for termination of the parent-child relationship. *See Liu v. Dep't Family & Protective Servs.*, 273 S.W.3d 785, 791 (Tex. App.—Houston [1st Dist.] 2008, no pet.). There must be evidence to support a determination that a parent's mental illness or deficiency excludes her from now and in the future providing for her child or children. *See In re A.L.M.*, 300 S.W.3d 914, 928-29 (Tex. App.—Texarkana 2009, no pet.).

4

*The Evidence*

K.H. has been subjected to psychological evaluations since she was at least fourteen years old. A psychological review dated December 7, 2000, showed that K.H. was diagnosed with mild intellectual and developmental disabilities (IDD).[2] As a result of this diagnosis, K.H. was recommended for respite care services.[3]

At the Department's request, a mental status interview of K.H was conducted on October 26, 2012. At that time, K.H. had two children, N.H. (two years old) and M.H. (one year old). The purpose of the referral was to gain a mental health diagnosis and determine K.H.'s intellectual level of functioning. The referral specifically stated that the Department needed to know

> if [K.H.] has a mental or emotional illness or a deficiency that renders [K.H.] unable to provide for the physical, emotional, and mental needs for her children. If there is that illness or deficiency, in all reasonable probability, proved by clear and convincing evidence, will that continue until the 18th birthday of the child[?]

Dr. Angus Don Walker conducted the mental status interview of K.H. He explained that his main concern was whether K.H. suffered from mild IDD, but noted that he suspected K.H. might have been slightly depressed. Dr. Walker testified that K.H. "fidgeted a lot" during the interview, did not actively cooperate but was not passive aggressive, and described her as having a "devil-may-care" or "I could care less" attitude.

The results of the testing showed that K.H.'s arithmetic skills are "very minimal," and her reading is "seriously limited." K.H. has "an IQ of 63 in the extremely low range at the 1st percentile," and her academic scores were "also very low and consistent with her learning potential." Although Walker's evaluation was conducted more than one year before trial, he explained that the results are unlikely to have changed in any significant manner.

Dr. Walker's evaluation noted that K.H. has some narcissistic and dependent personality traits. It states, "Given the diagnosis of mild mental retardation . . . and the deficits in working

---

[2] "Intellectual and developmental disabilities" (IDD) is used instead of "mental retardation."

[3] Respite care is a service available to individuals with IDD in which someone is assigned to the home to care for the individual in the event that family is not available, or housing is provided for individuals with IDD for a short period of time.

memory, common sense, judgment, and reasoning, it seems clear that [K.H.] lacks the abilities to make necessary decisions about the care, and safety of her children."

Dr. Walker testified that K.H.'s ability to provide safety and care for her children "is severely compromised and [she] will require aid." According to Dr. Walker, even with counseling and social skills training, K.H. will not be able to independently care for her children. While there were certain types of "very minimal skills" that K.H. could learn, Dr. Walker explained that K.H. could not know when it was appropriate or not appropriate to use those skills.

Dr. Walker maintained that K.H. did not have the necessary cognitive abilities required to provide for a child's needs until the child's eighteenth birthday, and testified that her abilities would not change over time. He explained that in order to raise J.L.F., K.H. would need a surrogate, not assistance, i.e., someone to live with her and to "trump" her decisions. But Dr. Walker testified that even under those circumstances, he "would have some question about [K.H.] being consistently willing to take the leadership of a surrogate."

On June 9, 2014, K.H. submitted to additional testing at the Burke Center.[4] Charlotte Ingle, a licensed professional counselor and psychological associate for the Essential Services division for the Burke Center, conducted K.H.'s test. The results of the testing showed that K.H. has mild IDD. Ingle testified that the overall age equivalent for K.H.'s adaptive behavior is ten years and nine months. She explained that the tests measured K.H.'s motor skills, social and communication skills, personal living skills, K.H.'s interaction with the community, and K.H.'s overall ability to function independently. K.H.'s testing scores made her eligible for counseling, respite care, placement in a group home, and a program for obtaining employment, but K.H. sought only counseling services. After the completion of Ingle's evaluation, K.H. attended a counseling session (the Friday before trial).

Ingle was asked whether she had an opinion relating to whether it would be in an infant's best interest to be placed with K.H. as the primary caregiver. Ingle testified, "There are some people who have mental retardation who can parent a child and some who can't." Ingle confirmed that people with IDD can be trained to care for a child, and that counseling services are one way to provide training. Ingle did not give an opinion as to whether it would be in an

---

[4] The Burke Center is the local Mental Health/Mental Retardation center. There are two main parts of the Burke Center: Burke Center Mental Health and Burke Center Intellectual and Developmental Disabilities.

infant's best interest to be placed with K.H. as the primary caregiver, but testified that parenting a child would be "difficult" for someone who was ten years and nine months old.

Janice Robinson, a licensed professional counselor, began seeing K.H. in January 2013—prior to J.L.H.'s birth—because K.H. had a case with the Department involving her two older children. Robinson testified that the counseling sessions were supposed to address K.H.'s parenting skills, and her ability to cope with the stressors of being a parent. K.H. attended only five counseling sessions, did not cooperate or seem to want to make progress, would not talk about the issues for which she was in counseling, and sometimes did not talk during a session. Robinson testified that K.H.'s last "no-show" appointment was after the termination trial involving K.H.'s two oldest children—"I think March 18, 2014." When asked whether it would be in an infant's best interest to have K.H. serve as his primary caregiver, Robinson testified that K.H. had "very poor judgment," never mentioned the children, and did not seem to have much interest in them. K.H. also had "very limited" problem-solving skills and handled stressors "very poorly." "[B]eyond that," Robinson testified, she did not know what she would be qualified to say regarding an infant's best interest.

DeAnn Stewart was the conservatorship worker assigned to K.H.'s case involving her two older children and to the current case. She testified that K.H.'s two older children were removed, in part, because they were not being taken "well care of." She stated that the home was infested with insects, roaches were inside the refrigerator, trash was strewn about the home, and food items were left uncovered on the cabinets.

Stewart testified that K.H. does not appear to understand that her parental rights to her two older children were terminated. On April 22, 2014, K.H. texted Stewart about wanting to go on a field trip with N.H. and M.H., and Stewart had to tell K.H. that she could not go (because K.H.'s parental rights were terminated and the Department had permanent managing conservatorship). Furthermore, when K.H. saw Stewart in public on July 7, 2014, she asked about the children and told Stewart "that she was going to get the boys back."

Stewart testified that throughout the pendency of this case, she has observed K.H. bicker with her mother (J.H.) and described the bickering as "beyond" normal. Stewart testified that there was "lots of shouting," "telling each other to shut up, especially from [K.H.]," and that K.H. would curse at J.H. Stewart further testified that throughout the case, K.H. would refuse to cooperate or take direction from J.H.

7

J.H. testified that K.H. is the younger of her two daughters. J.H.'s older daughter has special needs and lives in a group home, and K.H. is continuing to live with J.H. J.H. testified that prior to J.L.H.'s birth, she watched K.H.'s two older children before their removal because K.H. could not watch the children on her own. Nevertheless, she testified that K.H. could live on her own because "[i]t's ability or have a mind what she needs because she knows how to do, because I trained my daughter how to do."

*Discussion*

Testing results from 2000, 2012, and 2014 all show that K.H. has mild IDD. K.H. has the adaptive behavior equivalency of ten years and nine months. Although she can be trained to perform specific skills and tasks related to parenting, this training is generally provided through counseling. K.H. was provided the opportunity to attend counseling from the time that her two older children were removed from her care in 2012, until the time of this trial in 2014. Despite her attendance, K.H. did not actively participate in counseling, and the evidence showed that her personality traits made it unlikely that she would submit to the leadership of a surrogate in parenting J.L.H.

After viewing the evidence in the light most favorable to the finding, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that K.H. has a mental or emotional illness or a mental deficiency that renders her unable to provide for the physical, emotional, and mental needs of the child, and that K.H.'s illness or deficiency, in all reasonable probability, will continue to render her unable to provide for J.L.H.'s needs until his eighteenth birthday. *See* TEX. FAM. CODE ANN. § 161.003(a)(1), (2); *In re J.F.C.*, 96 S.W.3d at 266. After viewing the entire record, we hold that a fact finder could reasonably have formed a firm belief or conviction that the Department's allegations under Section 161.003(a)(1) and (2) are true. *See id.*

## Reasonable Efforts

The Department's preparation and administration of a family service plan is generally considered "reasonable efforts" to return a child to its parent. *In re M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.). Efforts to provide a parent with training, classes, assistance with medical or mental needs, and information to address those needs also qualify as "reasonable efforts," even if the parent fails to make significant improvement. *See Rodriguez v.*

***Tex. Dep't of Family & Protective Servs.***, No. 03-05-00321-CV, 2006 WL 1358488, *7 (Tex. App.—Austin May 19, 2006, no pet.) (mem. op.).

*The Evidence*

Stewart testified that the Department created a service plan which mirrored the service plan that was implemented in K.H.'s case with her two older children. She confirmed that the plan for J.L.H. "was always termination," and that attempts at reunification and visitation were never actively pursued.

Stewart described K.H. as being "hostile" and "constantly angry" towards her. She testified that much of the hostility was due to K.H.'s belief "that I removed those children [(K.H.'s two older children)] and . . . I didn't." Although K.H. attended some counseling, it was unsuccessful because K.H. was "catatonic" or "would not participate" during the sessions. Stewart attempted to schedule visits between K.H. and J.L.H., but when she tried to schedule them, K.H. "cursed me numerous times and told me she didn't want to talk to me about the children. So I didn't schedule a visit." Stewart testified that she attempted to schedule visits once each month, but was repeatedly told by K.H. to "leave me alone."

*Discussion*

Although family reunification was not actively pursued, a service plan was created and counseling services were offered to K.H. throughout the entirety of this case. Furthermore, the Department continued its attempts to schedule visits between K.H. and J.L.H. despite K.H.'s termination of parental rights to her two older children, hostility towards the Department, and demands to leave her alone.

After viewing the evidence in the light most favorable to the finding, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that the Department has made reasonable efforts to return J.L.H. to K.H. *See* TEX. FAM. CODE ANN. § 161.003(a)(4); ***In re J.F.C.***, 96 S.W.3d at 266. After viewing the entire record, we hold that a fact finder could reasonably have formed a firm belief or conviction that the Department made reasonable efforts to return J.L.H. to K.H. *See **id.***

## Best Interest of the Child

The party seeking termination must prove by clear and convincing evidence that termination of a parent's rights is in the child's best interest. *See* TEX. FAM. CODE ANN.

§ 161.003(a)(5). Parental rights may not be terminated merely because a child might be better off living elsewhere. *In re C.R.*, 263 S.W.3d 368, 375 (Tex. App.—Dallas 2008, no pet.).

In determining the best interest of the child, the courts consider a number of factors including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

The family code also provides a list of factors that we will consider in conjunction with the above-mentioned *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307(b) (West 2014). Here, the applicable statutory factors include (1) the child's age and physical and mental vulnerabilities; (2) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (3) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (4) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (5) whether the child's family demonstrates adequate parenting skills; and (6) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.* § 263.307(b) (1), (6), (7), (10), (12), (13).

The Department need not prove all of the statutory or *Holley* factors to show that termination of parental rights is in the children's best interest. *See Holley*, 544 S.W.2d at 372; *In re J.I.T.P.*, 99 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest. *In re M.R.J.M.*, 280 S.W.3d at 507. But the presence of scant evidence relevant to each factor will not support such a finding. *Id.* Evidence supporting termination of parental rights is also probative in determining whether termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 28-29.

*Discussion*

In addition to K.H.'s diagnosis of mild IDD, the evidence showed that prior to the removal of K.H.'s oldest children, she would eat dirt, and had refused to pick up one of her children from school "because she just didn't feel like going and getting him." These factors weigh in favor of termination. *See* TEX. FAM. CODE ANN. § 263.307(b)(6); **Holley**, 544 S.W.2d at 372.

Although J.H. testified that she was willing and able to be a surrogate for J.L.H., the evidence showed that J.H. had heard K.H. hitting one of her older children at night, had said that K.H. refused to feed her children, and blamed K.H. for the conditions of the home at the time of the removal of K.H.'s two older children. J.H. confirmed that she never called the Department or sought help from anyone else even though she knew K.H. was neglecting her children. J.H. testified that the reason she did not seek help was because "I didn't know the phone number."[5] At the time of trial, J.L.H. was less than one year old and was unable to self-protect. These factors weigh in favor of termination. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (7), (12); **Holley**, 544 S.W.2d at 372.

J.H. agreed that despite her best efforts, they were not enough to keep her house clean, which was among the contributing factors leading to the removal of K.H.'s two older children. At the time of trial, J.H. testified that her house was clean and bug-free. She also testified that if something happened that made her unable to serve as a surrogate, her sisters could help K.H. But none of J.H.'s sisters sought consideration as a placement for J.L.H. at the time of his removal. Moreover, the evidence showed that Stewart contacted two of K.H.'s aunts—Ella and Carol—about adopting J.L.H. Stewart testified that neither aunt was interested in adopting J.L.H. "because they don't want to have to deal with [K.H.'s] and [J.H.'s] behaviors." She also stated that the aunts "mentioned that they have spent a lifetime assisting these two ladies; and they felt that if they adopted [J.L.H.], they couldn't deal with [K.H. and J.H.]." No other family members are available to adopt J.L.H. These factors also weigh in favor of termination. *See* TEX. FAM. CODE ANN. § 263.307(b)(13); **Holley**, 544 S.W.2d at 372.

After viewing the evidence in the light most favorable to the finding, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of K.H.'s

---

[5] J.H. confirmed that she knew how to find the Department's phone number. She testified that if J.L.H. was returned home and assistance was needed, she would seek help from the Department, family members, or anyone else.

parental rights was in J.L.H.'s best interest. *See* TEX. FAM. CODE ANN. § 161.003(a)(5); ***In re J.F.C.***, 96 S.W.3d at 266. After viewing the entire record, we hold that a fact finder could reasonably have formed a firm belief or conviction that the allegation that the termination of K.H.'s parental rights is in J.L.H.'s best interest is true. *See* TEX. FAM. CODE ANN. § 161.003(a)(5); ***In re J.F.C.***, 96 S.W.3d at 266.

**Conclusion**

We conclude that the evidence supporting termination of K.H.'s parental rights pursuant to Section 161.003 of the family code is legally and factually sufficient. Accordingly, we overrule K.H.'s first issue. Because we have held the evidence is legally and factually sufficient to terminate K.H.'s parental rights under Section 161.003, we need not address K.H.'s sufficiency challenges for termination of parental rights under Section 161.001 of the family code. *See* TEX. R. APP. P. 47.1; *see, e.g.*, ***In re C.C.***, No. 12-09-00429-CV, 2011 WL 198595, at *6 n.2 (Tex. App.—Tyler Jan. 19, 2011, no pet.) (mem. op.) (when evidence is sufficient to support termination under one ground, appellate court need not address sufficiency challenges to other grounds for termination).

## DISPOSITION

Having overruled K.H.'s first issue, we ***affirm*** the judgment of the trial court.

JAMES T. WORTHEN
Chief Justice

Opinion delivered December 3, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 3, 2014**

**NO. 12-14-00216-CV**

**IN THE INTEREST OF J. L. H., A CHILD**

Appeal from the 420th District Court
of Nacogdoches County, Texas (Tr.Ct.No. C1329423)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*