# NO. 12-13-00315-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

|  |  |
|---|---|
| *IN THE INTEREST OF* | §     *APPEAL FROM THE* |
|  | §     *COUNTY COURT AT LAW* |
| *J.H., A CHILD* | §     *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

V.H. appeals the termination of her parental rights. In seven issues, she challenges the sufficiency of the evidence. We affirm.

## BACKGROUND

V.H. is the mother of J.H., born June 2, 2012. J.F. is the father of J.H. and is not a party to this appeal. On July 2, 2012, the Department of Family and Protective Services (the Department) filed an original petition for protection of J.H., for conservatorship, and for termination of V.H.'s parental rights. That same day, the trial court signed an order for protection of a child in an emergency and appointed the Department as the temporary sole managing conservator of J.H.

At the conclusion of the trial on the merits, the trial court found, by clear and convincing evidence, that V.H. had engaged in one or more of the acts or omissions necessary to support termination of her parental rights. The trial court also found that termination of the parent-child relationship between V.H. and J.H. was in the child's best interest. Based on these findings, the trial court ordered that the parent-child relationship between V.H. and J.H. be terminated. This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

The involuntary termination of parental rights embodies fundamental constitutional rights. *In re C.L.C.*, 119 S.W.3d 382, 390 (Tex. App.—Tyler 2003, no pet.); *Vela v. Marywood*, 17

S.W.3d 750, 759 (Tex. App.—Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001). When the state seeks to terminate one's parental rights, it seeks not only to infringe one's fundamental liberty interest, but to end it. *See **In re J.F.C.***, 96 S.W.3d 256, 273 (Tex. 2002). A termination decree is "complete, final, irrevocable [and] divests for all time the parent and child of all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit." ***Wiley v. Spratlan***, 543 S.W.2d 349, 352 (Tex. 1976); ***In re Shaw***, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.). Thus, the breaking of bonds between a parent and child "can never be justified without the most solid and substantial reasons." ***Wiley***, 543 S.W.2d at 352; ***In re Shaw***, 966 S.W.2d at 179. Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. ***Wiley***, 543 S.W.2d at 352; ***In re Shaw***, 966 S.W.2d at 179. However, parental rights are not absolute, and it is vital that the emotional and physical interests of the child not be sacrificed at the expense of preserving that right. *See **In re C.H.***, 89 S.W.3d 17, 26 (Tex. 2002).

Section 161.001 of the Texas Family Code permits the termination of parental rights if two elements are met. TEX. FAM. CODE ANN. § 161.001 (West 2014). First, the parent must have engaged in any one of the acts or omissions itemized in the first subsection of the statute. ***Id.*** §161.001(1) (West 2014); ***In re C.L.C.***, 119 S.W.3d at 390. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2) (West 2014); ***In re C.L.C.***, 119 S.W.3d at 390. Both elements must be proved by "clear and convincing evidence," and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; ***In re C.L.C.***, 119 S.W.3d at 390. "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2014). Because there is a strong presumption that the best interest of the child is usually served by preserving the parent-child relationship, the burden of proof rests upon the party seeking to deprive the parent of his or her parental rights. *See **Wiley***, 543 S.W.2d at 352; ***In re C.L.C.***, 119 S.W.3d at 391.

### STANDARD OF REVIEW

When the burden of proof is clear and convincing evidence, we conduct a legal sufficiency review by looking at all of the evidence in the light most favorable to the finding to determine

whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d at 266. We must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* Thus, it follows that the reviewing court should disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible, but this does not mean that the reviewing court must disregard all evidence that does not support the finding. *Id.* Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *Id.* If, after conducting our legal sufficiency review, we determine that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then we will conclude that the evidence is legally insufficient. *Id.*

When we conduct a factual sufficiency review, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *Id.* Our inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *Id.* We consider whether the disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If, when viewed in light of the entire record, the disputed evidence is so significant that a fact finder could not have reasonably formed a firm belief or conviction, then the evidence is factually insufficient. *Id.* In finding evidence factually insufficient, the appellate court should detail why it has concluded that a reasonable fact finder could not have credited disputed evidence in favor of its finding. *Id.* at 267.

The standard of review for legal and factual sufficiency challenges maintains a deferential standard for the fact finder's role, which means the trier of fact is the exclusive judge of the credibility of the witnesses and weight to be given their testimony. *In re C.H.*, 89 S.W.3d at 26-27; *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). Thus, our review must not be so rigorous that the only fact findings that could withstand review are those established beyond a reasonable doubt. *In re C.H.*, 89 S.W.3d at 26.

## TERMINATION UNDER SECTION 161.001(1)(M)

In her seventh issue, V.H. argues that the evidence is legally and factually insufficient to support a finding that she had her parent-child relationship terminated with respect to another child based on a finding that her conduct was in violation of Section 161.001(1), subsection (D) or

3

(E) of the Texas Family Code. The court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent had her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Section 161.001(1), subsection (D) or (E). *See* TEX. FAM. CODE ANN. § 161.001(1)(M) (West 2014).

The record shows that Lawanda Tucker, a conservatorship worker with the Department and V.H.'s caseworker, testified that V.H.'s parental rights were terminated as to one of her older children, Mo.H.[1] During her testimony, a certified copy of a final decree of termination filed in the district court of Travis County, Texas, on April 27, 2009, was offered and admitted into evidence without objection. Tucker confirmed, and the termination decree showed, that the district court found V.H.'s conduct violated Section 161.001(1), subsections (D) and (E) of the Texas Family Code, and that the district court terminated V.H.'s parent-child relationship with Mo.H.

V.H. argues, however, that the Department failed to introduce evidence through a proper witness about the specific instances that led to the purported findings. She contends that the Department must again present the underlying facts from the earlier trial to support the prior court's decree of termination for use in this trial. It is well established, however, that when a prior decree of termination as to another child is properly admitted into evidence, the Department need not reestablish that the parent's conduct with respect to that child was in violation of Section 161.001(1), subsection (D) or (E). *In re J.M.M.*, 80 S.W.3d 232, 243 (Tex. App.—Fort Worth 2002, pet. denied), *disapproved of on other grounds*, *In re J.F.C.*, 96 S.W.3d at 267 & n.39. The Department need show only that the parent's rights were terminated as to another child based on findings that the parent violated subsections (D) or (E). *See In re J.M.M.*, 80 S.W.3d at 243; TEX. FAM. CODE ANN. § 161.001(1)(M).

As a matter of law, V.H.'s parental rights to her older child, Mo.H., were terminated based on findings in the termination decree that she violated Section 161.001(1), subsections (D) and (E) of the Texas Family Code. Therefore, we hold that the evidence is legally and factually sufficient to support termination of V.H.'s parental rights under Section 161.001(1)(M). *See In re J.F.C.*, 96 S.W.3d at 266. Accordingly, we overrule V.H.'s seventh issue regarding Section 161.001(1)(M).

---

[1] Tucker's testimony showed that V.H. had previously relinquished her parental rights to two other children as well.

4

In her fifth and sixth issues, V.H. argues that the evidence is legally and factually insufficient to support a finding that termination of her parental rights was in J.H.'s best interest.

In determining the best interest of the child, the courts consider a number of factors including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The family code also provides a list of factors to consider in determining a child's best interest and whether a child's parents are willing and able to provide a child with a safe environment, which we will consider in conjunction with the *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307(a), (b) (West 2014). The applicable statutory factors here include (1) the child's age and physical and mental vulnerabilities; (2) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; and (3) whether there is a history of substance abuse by the child's family or others who have access to the child. *See id.* § 263.307(b).

The Department need not prove all of the statutory or *Holley* factors to show that termination of parental rights is in the child's best interest. *See Holley*, 544 S.W.2d at 372; *In re J.I.T.P.*, 99 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *In re M.R.J.M.*, 280 S.W.3d 494, 507 (Tex. App.—Fort Worth 2009, no pet.). But the presence of scant evidence relevant to each factor will not support such a finding. *Id.* Evidence supporting termination of parental rights is also probative in determining whether termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 28-29.

## Analysis

We begin our analysis by noting that at the time of trial, the Department was also seeking termination of V.H.'s parental rights to her youngest child, M.L.H.-M. The two children who

were the subject of the hearing have different fathers—J.F. is the father of J.H. and B.M. is the father of M.L.H.-M. At the time of trial, V.H. was still in a relationship with B.M., but the Department sought to terminate only V.H.'s parental rights to each child.[2]

J.H. was fourteen months old at the time of trial, had recently been hospitalized for pneumonia, and was too young to express his desires. Although V.H. completed a parenting course and "made the visits" with J.H., Tucker testified that she supervised the visits, but has not seen V.H. demonstrate an ability to parent.

The evidence at trial showed that V.H. had a history of mental illness and drug abuse. As a teenager, V.H. was diagnosed with bipolar disorder, depression, and unstable moods. V.H.'s licensed professional counselor testified that V.H.'s main issue was depression, and they talked about positive thinking skills, focusing on things that she can control, and managing her anger. Based on V.H.'s self-reporting, her counselor testified that V.H. has "fairly managed" her conditions, but clarified that she has not been discharged from counseling. He said they had discussed the importance of V.H.'s being a role model for her children and participating in services. They also discussed V.H.'s relationship with B.M. The counselor's testimony showed that B.M. was not participating in services and that he explained to V.H. that B.M.'s failure to participate did not reflect a stable home. Upon receiving this counsel, "most of the time [V.H.] went back into the victim role, blaming other people and not taking responsibility for the mistakes that she's made." V.H. maintained her relationship with B.M. throughout the case, even though she knew he was using drugs and refused to participate in services.

In addition to testimony from V.H.'s counselor, the Department offered testimony from J.H.'s father, J.F. Although J.F. did not currently have possession of J.H., it was shown that the Department planned to conduct a monitored return of J.H. with J.F. J.F. completed all of the services requested by the Department, maintained employment, and passed every drug test. J.F. has a sixteen-year-old daughter who currently lives with him and his mother. Due to J.H.'s medical conditions, J.F. planned to obtain "some type of Medicaid" to ensure that J.H. was able to receive medical attention once J.H. was placed with him. J.F. planned to take J.H. to daycare while he worked during the day, and he also confirmed that he had family who could help him take care of J.H.

---

[2] V.H. appealed the trial court's termination of her parental rights to M.L.H.-M. This court affirmed the trial court's judgment. *See In re M.L.H.-M.*, No. 12-13-00316-CV, 2014 WL 357048 (Tex. App.—Tyler Jan. 31, 2014, no pet.) (mem. op.).

6

The evidence showed that V.H. and B.M. made false allegations against J.F., and harassed, cursed, and stalked him. One allegation included the accusation that J.F. had been physically violent towards V.H. and that he had jumped out of the bushes with a knife at V.H.'s house. J.F. testified that these accusations were untrue, that B.M. and V.H. would show up uninvited to his home, and that they would try to start trouble anywhere. J.F. had seen B.M. at court and parenting classes with V.H. He confirmed that he has seen B.M. act "unstable" and that it would be dangerous for B.M. to be around J.H. J.F. stated that in one meeting between him, the Department, and V.H., V.H. "holler[ed]," "yell[ed]," and said "some really awful stuff." Based on his experiences with V.H., he believed that it was in J.H.'s best interest that her parental rights be terminated and believed that she had nothing positive to offer J.H.

Testimony unrelated to V.H.'s and B.M.'s interactions with J.H. and J.F. further illustrated V.H.'s erratic and unstable behavior. V.H.'s caseworker testified that she had taken "a lot" of verbal abuse from V.H. and B.M., and that their behavior in visits with M.L.H.-M. resulted in their weekly visits being reduced to bi-weekly visits. The caseworker testified that V.H. and B.M. did not follow visitation rules, were disrespectful to the Department staff, and did not exhibit appropriate behavior during their visits, i.e., sitting and napping, talking on their cellular telephones, and talking negatively about the staff.

The overwhelming theme throughout V.H.'s medical and mental health records was instability and chaos that continued to the time of trial due to her relationship with B.M. and continuing drug use. Prior to trial, V.H. was asked to submit to a drug test, but she refused. V.H.'s counselor confirmed that he would not be surprised that V.H. was previously diagnosed with delusional disorder and borderline personality disorder, and testified that V.H.'s pattern of behavior was concerning because it has not changed. When asked whether he could imagine any scenario in which it would be safe to return either J.H. or M.L.H.-M. to V.H.'s care, the counselor responded in the negative. According to V.H.'s caseworker, if V.H.'s parental rights were not terminated, V.H. would continue to cause problems for J.H. and J.F.[3]

Viewing the evidence relating to the *Holley* and statutory factors in the light most favorable to the finding, we hold that a reasonable fact finder could have formed a firm belief or conviction that termination of V.H.'s parental rights was in J.H.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 266. However, V.H. contends that there is no history of instability in the home with

---

[3] The evidence also showed that one of V.H.'s older children was removed from her care because she failed to consent to a life-sustaining medical procedure. The Department intervened, and the child was saved.

7

respect to J.H., no evidence of frequent or repeated harm to J.H., no history of family violence, and no evidence that the child was ever uncomfortable or distressed during her visits. V.H. contends that she demonstrated a willingness and capability to work on her parenting and demonstrated her ability to effect positive environmental and personal changes within a reasonable time period.

We agree that there is no evidence that J.H. sustained physical injuries while in V.H.'s care, and there is no evidence relating to V.H.'s behavior during her supervised visits with J.H. However, V.H.'s contention that she demonstrated a willingness and capability to work on her parenting skills and demonstrated an ability to effect positive change is directly contradicted by testimony from V.H.'s counselor and caseworker. Although V.H. points to some evidence that could weigh against termination, this evidence is not so significant that a reasonable trier of fact could not have reconciled the evidence in favor of its finding and formed a firm belief or conviction that terminating V.H.'s parental rights was in J.H.'s best interest. *See id.* Therefore, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of V.H.'s parental rights is in J.H.'s best interest. Accordingly, we overrule V.H.'s fifth and sixth issues regarding the best interest of the child.

## DISPOSITION

Having overruled Appellant's fifth, sixth, and seventh issues, we ***affirm*** the judgment of the trial court.[4]

**BRIAN HOYLE**
Justice

Opinion delivered May 30, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

---

[4] Because we have concluded that the evidence is legally and factually sufficient to support termination of V.H.'s parental rights under subsection (1)(M), we need not address V.H.'s first, second, third, and fourth issues regarding subsections (1)(D) or (1)(E). *See* TEX. FAM. CODE ANN. § 161.001(1) (West 2014); TEX. R. APP. P. 47.1.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 30, 2014**

**NO. 12-13-00315-CV**

**IN THE INTEREST OF J.H., A CHILD**

Appeal from the County Court at Law

of Cherokee County, Texas (Tr.Ct.No. 2012-07-0506)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*