**Opinion issued December 21, 2023**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00548-CV

_____

## IN THE INTEREST OF A.B.A. A/K/A A.B.S., A CHILD

---

### On Appeal from the 313th District Court
### Harris County, Texas
### Trial Court Case No. 2022-00726J

---

## MEMORANDUM OPINION

In this case, the Texas Department of Family and Protective Services ("DFPS"

or "the Department") sought termination of the parental rights of H.B.S. ("Mother")

and G.F.A. ("Father") to their minor daughter, A.B.A. *a/k/a* A.B.S. ("Alice").[1] Upon

---

[1]     In this opinion, we use pseudonyms for the minor child, her parents, her brother,
        and her extended family members to protect their privacy. *See* TEX. R. APP. P.
        9.8(b)(2).

the associate judge's recommendation following a bench trial, the trial court signed an order terminating Mother's parental rights pursuant to three statutory predicate grounds for termination and terminating Father's parental rights pursuant to two statutory predicate grounds. *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E), (O). The court also found that terminating Mother's and Father's parental rights was in Alice's best interest. The court appointed DFPS as Alice's sole managing conservator.

On appeal, Mother raises six issues and Father raises five issues. Both parents argue that: (1) the trial court erred by terminating their parental rights because at trial, the Department abandoned the grounds for termination alleged in its live pleading and therefore the judgment was not supported by the pleadings; (2)–(3) the evidence was legally and factually insufficient to support termination under Family Code subsections 161.001(b)(1)(E) and (O); (4) the evidence was legally and factually insufficient to support the trial court's finding that termination was in Alice's best interest; and (5) the trial court abused its discretion by appointing the Department as Alice's sole managing conservator. In an additional issue, Mother challenges the legal and factual sufficiency of the evidence to support termination of her parental rights under subsection 161.001(b)(1)(D). The Department waived its opportunity to file a brief and stated it was "taking no position in this appeal."

We reverse and remand for further proceedings.

## Background

Mother and Father have two children together: K.F.A. ("Kendall"), a son born in 2017, and Alice. Mother has two older sons from prior relationships, and Father also has a son from a prior relationship. None of these children live with Mother or Father. In June 2018, a Liberty County district court terminated Mother's and Father's parental rights to Kendall. Kendall was adopted by Mother's cousin A.G. ("Amanda") and her husband Z.G. ("Zane"). Mother still has her parental rights to her older sons.

Alice was born in April 2022.[2] At the time, Mother, Father, and Father's mother all lived together at a hotel in Baytown, Texas. The Department immediately became involved in Alice's life because Mother tested positive for methamphetamine while at the hospital. Although Alice did not test positive for methamphetamine in her urine, her meconium did test positive. Father also took a drug test, and although his urinalysis results were negative for the presence of drugs, his hair follicle tested positive for methamphetamine. At the time of Alice's birth, Father was on parole for a possession of a controlled substance offense.

---

[2] Alice was born prematurely, and she also tested positive for "non-reactive syphilis" at birth. However, she was healthy and had no medical concerns at the time she was discharged from the hospital. At the time of trial, Alice was "about two months behind" on her developmental milestones due to her premature birth, but she was healthy and was not receiving any special services. Alice's current doctor had no concern about the prior syphilis diagnosis.

The Department filed an "Original Petition for Protection of a Child for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship." The Department requested that if Alice could not safely be reunited with either Mother or Father, the court appoint a relative, another suitable person, or the Department itself as Alice's sole managing conservator. In the alternative, the Department sought termination of Mother's and Father's parental rights and asserted several statutory predicate grounds as the basis for termination.

The trial court appointed DFPS as Alice's temporary managing conservator. While this proceeding was pending, the Department placed Alice with Amanda and Zane.

The trial court ordered Mother and Father to comply with family service plans. Among other things, the service plans required Mother and Father to obtain appropriate, safe, and stable housing; maintain stable income; refrain from using illegal substances and comply with random drug screening; participate in a drug and alcohol assessment and follow all recommendations given; complete a psychosocial evaluation; participate in and complete parenting classes; and refrain from criminal activity.

At the start of an April 2023 trial setting before the associate judge, DFPS's counsel requested that before proceeding with trial, the court rule on a "motion for monitored return." DFPS's counsel acknowledged that both Mother and Father had

a history of drug use, but Father's last positive drug test was in April 2022 and Mother's last positive test was in June 2022. They had "completed all of their services," they had obtained housing, and Father was employed with Harris County. The DFPS caseworker, Iris Darrington, believed that Mother and Father were committed to their sobriety and to demonstrating that their lifestyles had changed. Both Mother and Father had actively engaged in the services required of them and had "mediate[d] the concerns that brought [Alice] into care."

Mother and Father had engaged in weekly supervised visits with Alice as the case progressed. Counsel stated that the Department was "ready to start transitioning [Alice] home," and it had a proposed "transition plan that would begin with unsupervised visits." Darrington testified that the transition plan started with two unsupervised four-hour visits. If those visits were successful, DFPS planned to gradually increase the unsupervised visits to six hours, then day visits for eight hours, and then overnight visits. Darrington testified that the Department wished to place Alice with Mother and Father after six weeks of increasing unsupervised visitation and then monitor the placement for an additional six months. DFPS would continue to require drug testing during this monitoring period, and it would provide additional services if necessary, such as daycare services if Mother became employed and "aftercare service" that provides parenting support and therapy.

Darrington believed it was in Alice's best interest to be returned to Mother and Father's care.

Both Alice's ad litem attorney and the child advocate assigned as Alice's guardian ad litem, Alicia Lee, had reservations about this plan.[3] The ad litem attorney was concerned with Mother's and Father's past drug history, their prior drug-related criminal convictions, Mother's history with DFPS with respect to her older sons, the termination of Mother's and Father's parental rights to Kendall in 2018, and the fact that they had only recently obtained a sponsor through their AA/NA program.

Darrington also acknowledged that although Mother and Father had completed the services required by their service plans, Amanda still had "concerns about safety, security, [and] stability," and she was opposed to reuniting Alice with Mother and Father. Father agreed that he and Mother did not have a good relationship with Amanda, but if the court returned Alice to him and Mother, he was willing to facilitate Alice's continued relationship with her brother Kendall. Amanda, however, was not willing.

After hearing testimony from Darrington, Father, Mother, Amanda, and Lee, the trial court stated:

---

[3]    When asked about her opinion on the transition plan, Lee testified: "We think we should go week by week and see what develops. We also, again, would continue to encourage [Mother and Father] to maintain their sobriety and to take steps to do so."

6

First of all, all the evidence I heard right now, I'm going to take under consideration for trial. So the monitored return at this point is denied. What we're going to do is start the trial. I want you to present some of the exhibits that we can put in, then I'm going to recess, set the parties to mediation with [Amanda] and we will resume in about a month because I want to see if there's any ideas for attempting to have the adults work together for the child. But I'm agreeing with the ad litem and Child Advocates that, right now, I'm not doing the monitored return.

The court admitted eighteen exhibits offered by DFPS and stated: "[W]e just listened for an hour and a half of testimony. The Court's taking that into consideration as part of the trial record."[4]

Trial resumed two months later in June 2023 before the associate judge. At the beginning of this trial setting, DFPS, Mother, and Father all re-urged the motion for monitored return. Alice's ad litem attorney and Lee opposed returning Alice to Mother and Father's custody.[5] The trial court declined to reconsider its prior ruling

---

[4]    Mother's counsel objected, noting that she "thought it was one kind of hearing" and she "would have been a bit more vigorous in terms of objections if it had been a trial."

[5]    Lee testified that she believed Mother's and Father's parental rights to Alice should be terminated. Lee's concerns included Mother's and Father's delay in obtaining sponsors, Lee's inability to speak with Mother's and Father's sponsors, and Alice's status as a nonverbal one-year-old who would not be able to "verbalize anything that may [have] potential to cause her harm, abuse or neglect." Lee did not believe Mother and Father had completed their substance abuse treatment or that they had addressed, "to [Lee's] satisfaction, their addiction and coping strategies for high risk situations that may lead to a relapse." Lee further believed that Alice was thriving in her current placement with Amanda and Zane and that staying in that placement was in her best interest.

7

"at this time." However, the court noted that "[w]e're in trial" and monitored return "may be appropriate when everyone's finished putting on their evidence."

Darrington testified that since the April trial setting, Mother and Father had continued weekly supervised visits with Alice and those visits continued to be appropriate. They had also continued meeting with their sponsors, and those visits were also going well. Mother had obtained employment. DFPS's current goal was family reunification,[6] and it wanted to monitor Alice in Mother's and Father's home. Mother and Father had completed all required services and maintained sobriety, and the Department did not have any safety concerns, but the parties had not been able to exercise monitored return.

Darrington agreed with Father's counsel that DFPS was not seeking termination of Mother's and Father's parental rights. She testified that family reunification was in Alice's best interest because Mother and Father "have alleviated the concerns of the Agency. [Mother and Father] have demonstrated a lifestyle change. They have demonstrated their willingness unlike they have done before. They have shown they are able to meet the child's needs and they are willing to put the child's needs before their own."

---

[6] The Department's alternate goal was "relative conservatorship" with Amanda and Zane, but Darrington did not consider that a workable goal because Amanda "has made it clear she is not in favor of facilitating that goal." Darrington agreed that if the trial court ordered "relative conservatorship" with Amanda, Mother and Father both had legitimate fears that they would end up having no relationship with Alice.

At the beginning of closing arguments, counsel for DFPS stated, "We are abandoning our termination grounds. Of course, we are reurging the monitored return. Parents have alleviated the concerns of the Agency." Upon a question from the trial court, counsel agreed that the Department did not abandon its termination grounds before trial but that it was "just doing it now." Counsel again stated: "We are reurging the motion for a monitored return. In the alternative, we are asking for [permanent managing conservatorship] to the current caregivers [Amanda and Zane] with parents named as [possessory conservators]."

Alice's ad litem attorney agreed with Lee's request for termination of Mother's and Father's parental rights. The ad litem attorney acknowledged that Alice's only pleading on file was an original answer.

Following conclusion of the trial, the trial court signed a final judgment terminating Mother's and Father's parental rights to Alice. The court terminated Mother's parental rights pursuant to Family Code subsections 161.001(b)(1)(D), (E), and (O). The court terminated Father's parental rights pursuant to subsections 161.001(b)(1)(E) and (O). The court also found that termination of both parents' rights would be in Alice's best interest. The court appointed the Department as Alice's sole managing conservator. This appeal followed.

**Abandonment of Pleadings**

In their first issues, both Mother and Father argue that the trial court erred by terminating their parental rights to Alice because, at the close of trial, counsel for the Department stated on the record that the Department was abandoning the grounds for termination that it had pleaded in its original and amended petitions. No other pleadings seeking affirmative relief were on file with the trial court. Mother and Father therefore argue that the trial court's judgment terminating their parental rights was not supported by the pleadings.

**A.     *Standard of Review and Governing Law***

The trial court's final judgment must be supported by the pleadings. *See* TEX. R. CIV. P. 301. "An order terminating parental rights that is not supported by a pleading seeking termination of the parent-child relationship is erroneous and reversible." *In re E.H.*, No. 04-20-00440-CV, 2021 WL 799890, at \*2 (Tex. App.— San Antonio Mar. 3, 2021, no pet.) (mem. op.); *In re T.M.*, No. 07-20-00103-CV, 2020 WL 4773207, at \*2 (Tex. App.—Amarillo Aug. 17, 2020, no pet.) (mem. op.) ("If the trial court enters an order not supported by the pleadings, it commits reversible error."). "When a party abandons a claim in its live pleading, that pleading will no longer support a judgment on the abandoned claim." *In re E.H.*, 2021 WL 799890, at \*2; *In re T.M.*, 2020 WL 4773207, at \*3.

A party who abandons any part of its "claim or defense, as contained in the pleadings, may have that fact entered of record, so as to show that the matters therein were not tried." TEX. R. CIV. P. 165; *In re C.C.J.*, 244 S.W.3d 911, 921 (Tex. App.—Dallas 2008, no pet.). Whether a party has abandoned a pleading is a question of law that we review de novo. *In re I.L.*, 580 S.W.3d 227, 245 (Tex. App.—San Antonio 2019, pet. dism'd); *In re J.M.*, 352 S.W.3d 824, 826 (Tex. App.—San Antonio 2011, no pet.). A party may abandon a pleading by stipulation, "such as an agreement or concession 'made in a judicial proceeding by the parties or their attorneys respecting some matter incident thereto.'" *In re I.L.*, 580 S.W.3d at 245 (quoting *In re J.M.*, 352 S.W.3d at 826–27).

"A party abandons a pleading when it unequivocally states in open court it no longer seeks the pleaded relief." *In re E.H.*, 2021 WL 799890, at *2 (concluding that DFPS expressly abandoned its pleading for termination of father's parental rights when counsel announced at beginning of trial that Department was no longer seeking termination and caseworker unequivocally testified that Department was instead requesting that father be named possessory conservator, which was in child's best interest). Formal amendment of the pleadings is not required to show abandonment. *In re N.H.*, No. 02-22-00157-CV, 2022 WL 4374638, at *7 (Tex. App.—Fort Worth Sept. 22, 2022, no pet.) (mem. op.); *In re Shaw*, 966 S.W.2d 174, 177 (Tex. App.—El Paso 1998, no pet.).

11

**B.** *Whether the Department Abandoned its Pleadings Seeking Termination of Mother's and Father's Parental Rights*

Here, in its original and amended petitions, the Department requested that if reunification of Alice with Mother and Father was not possible, the trial court name a relative of Alice, another suitable person, or the Department itself as Alice's sole managing conservator. In the alternative, the Department sought termination of Mother's and Father's parental rights to Alice under several statutory predicate grounds. No other party had pleadings requesting affirmative relief on file.

At the first trial setting in April 2023, the Department's counsel requested that the trial court first consider its motion for monitored return. Counsel and Darrington, the DFPS caseworker, both explained the "transition plan" that had been formulated to reunite Alice with Mother and Father. Under this plan, Mother and Father would gradually have longer and longer unsupervised visits with Alice, including overnight visits if shorter unsupervised visits were successful. After six weeks of these visits, DFPS planned to return Alice to Mother and Father and monitor the placement for six months, offering additional services to Mother and Father if needed. Darrington testified that Mother and Father had completed the services required by their family service plans and had committed to their sobriety and lifestyle change, resolving the Department's concerns about leaving Alice in their care.

Although counsel for the Department, Mother, and Father all requested that the trial court grant the request for monitored return, both the ad litem attorney and

Lee on behalf of Child Advocates opposed it. Ultimately, the trial court denied the motion and considered the testimony in support of the request for monitored return as testimony relevant to trial on the termination grounds. The trial court recessed the trial proceedings until June 2023.

At the beginning of the June 2023 trial setting, counsel for the Department, Mother, and Father again urged the trial court to reconsider its ruling on the request for monitored return. The ad litem attorney and Lee again opposed this request. The trial court stated:

> So I'm not going to change the order at this time. We're in trial. I mean, that [monitored return] may be appropriate when everyone's finished putting on their evidence. I don't know. But it seems to me that we should be just going forward, finishing the trial and then, of course, you can argue whatever the evidence is, as can the others.

Darrington, Zane, and Lee all testified, with Darrington's and Lee's testimony primarily focusing on any changes since the April 2023 trial setting.

Darrington testified that the Department's current goal for Alice was "family reunification," and the Department "would like to monitor the child in the home." She testified that Mother and Father had "completed their services and maintained sobriety." The Department had no safety concerns with allowing Alice in the home, but it had not been "able to exercise [its] goal." The Department's alternative goal was "[r]elative conservatorship," continuing Alice's placement in Amanda and Zane's home. Darrington agreed with Father's counsel that DFPS was not seeking

termination of Mother's and Father's parental rights. Darrington testified that family reunification was in Alice's best interest because she believed Mother and Father had "alleviated the concerns of the Agency," "demonstrated a lifestyle change," "demonstrated their willingness unlike they have done before," and had "shown they are able to meet the child's needs and they are willing to put the child's needs before their own."

At the beginning of closing arguments, the Department's counsel and the trial court had the following exchange:

Counsel: We are abandoning our termination grounds. Of course, we are reurging the monitored return. Parents have alleviated the concerns of the Agency. When we were here in April, two lingering concerns were continuing—

The Court: So did you abandon your termination before we started trial or are you just doing it now?

Counsel: Now, Judge.

The Court: Okay.

Counsel: Two lingering concerns we heard last time were parents continuing with a sponsor, which they've done since the last setting. It was also raised the concern that Mom was not employed and she has found employment since then. We are reurging the motion for a monitored return. In the alternative, we are asking for [permanent managing conservatorship] to the current caregivers [Amanda and Zane] with parents named as [possessory conservators].

Although Mother's counsel repeatedly expressed confusion over what was before the trial court at the time, Father's counsel "support[ed] the position of DFPS." The

14

ad litem attorney supported termination and also confirmed on the record that his only pleading on file was an original answer. The trial court later signed a written judgment terminating Mother's and Father's parental rights to Alice and appointing DFPS as Alice's sole managing conservator.

We conclude that the Department—through Darrington's testimony and its counsel's statements on the record during closing argument—unequivocally abandoned the portion of its pleading seeking termination of Mother's and Father's parental rights. *See In re N.H.*, 2022 WL 4374638, at *8; *In re E.H.*, 2021 WL 799890, at *2; *In re T.M.*, 2020 WL 4773207, at *3; *In re I.L.*, 580 S.W.3d at 245; *In re J.M.*, 352 S.W.3d at 827–28. As a result, there was no pleading before the court that requested termination of Mother's and Father's parental rights to Alice. *See In re E.H.*, 2021 WL 799890, at *2 (concluding that mother, who had not filed pleading and did not seek leave to file one, could not rely on claim for termination abandoned by DFPS to uphold termination of father's parental rights). We hold that the trial court's judgment terminating Mother's and Father's parental rights to Alice was not supported by a pleading seeking termination of their rights and was therefore erroneous. *See In re N.H.*, 2022 WL 4374638, at *7; *In re E.H.*, 2021 WL 799890, at *2; *In re T.M.*, 2020 WL 4773207, at *2.

We sustain Mother's and Father's first issues.[7]

## Conclusion

We reverse the judgment of the trial court and remand for further proceedings.


April L. Farris
Justice

Panel consists of Justices Goodman, Countiss, and Farris.

---

[7] In light of our resolution of Mother's and Father's first issue, we remand the case for the trial court to reconsider the question of conservatorship of Alice. Furthermore, because we hold that the trial court's judgment terminating Mother's and Father's rights was not supported by the pleadings, we need not address Mother's second, third, and fourth issues and Father's second and third issues—all of which challenge the legal and factual sufficiency of the evidence supporting the statutory predicate grounds for termination—or Mother's fifth issue and Father's fourth issue—which challenge the legal and factual sufficiency of the evidence supporting the trial court's finding that termination of their parental rights was in Alice's best interest. *See* TEX. R. APP. P. 47.1 (stating that court of appeals must hand down written opinion that addresses "every issue raised and necessary to final disposition of the appeal").